## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

**ISMAEL ORTIZ,**

      **Plaintiff,**

     **-vs-**                   **Case No.  2:06–cv-322-FtM-MMH-DNF**

**MICHAEL J. ASTRUE[1],**
**Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter is before the Court on the Plaintiff's complaint (Doc. 1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB")  pursuant to 42 U.S.C. § 405(g).

The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums.  For the reasons set forth below, the Court recommends that the Commissioner's decision be **AFFIRMED**.

---

[1]     Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.  No further action need to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.      **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND STANDARD OF REVIEW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his/her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511.  The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On November 12, 2003, the Plaintiff filed applications for Disability Insurance Benefits  alleging an inability to work since June 6, 2002. [Tr. 52].  This claim was denied initially and upon reconsideration and thereafter the Plaintiff filed a request for a hearing.  The hearing was held before Administrative  Law  Judge (ALJ)  Richard Zack on January 26, 2006. [Tr. 377-403].  ALJ Zack  denied benefits on February 8, 2006. [Tr. 10-20].  The Plaintiff filed a Request for Review of the hearing decision which was denied  by the Appeals Council on May 5, 2006. [Tr. 4-7].   The Plaintiff has exhausted his administrative remedies and has filed a timely action in this Court.  This case is ripe for review under sections 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

At Step 1, the ALJ found the Plaintiff had not engaged in substantial gainful activity since his alleged date of disability.   At Step 2,  the ALJ concluded that the Plaintiff's impairments of back problems are "severe" impairments, based upon the requirements in the Regulations.  (20 C.F.R. §§ 404.1520(c).  [Tr. 19].   The Plaintiff has non-severe depression.  The ALJ did not find his mental impairment to be severe. [Tr. 15].  At Step 3, the ALJ found  these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  [Tr. 19].  The ALJ determined that the Plaintiff's allegations regarding his limitations were not fully credible. The Plaintiff testified he was receiving workmen's compensation and "retirement" disability insurance income of approximately $2,570.00 per month.  [Tr. 383]. Further,  the Plaintiff is considered a "younger individual 18 to 44"[2].  (20 C.F.R. §§ 404.1563 and 416.965). [Tr. 19]. At Step 4 the ALJ determined  the Plaintiff  was  unable to perform his past relevant work as a state trooper. [Tr. 13, 19].  At Step 5, with the testimony of a vocational expert and reliance on  Medical Vocational Rule 201.25 as a frame-work for his decision making, the ALJ determined that there are a significant number of jobs in the national economy that the Plaintiff could perform. [Tr. 19].  Vocational Expert, Joyce Ryan, testified that a significant number of jobs existed in the Plaintiff's  geographical area which the Plaintiff could perform considering his age, education and  residual functional capacity. [Tr. 399].  Accordingly, the ALJ found the Plaintiff was not disabled.

---

[2]       At the time of the hearing, the Plaintiff was thirty-nine (39) years of age.

3

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Crawford, 363 F.3d at 1158. Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). The magistrate judge, district judge and appellate judges all apply the same legal standards to the review of the Commissioner's decision. Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004); Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.    REVIEW OF FACTS

The Plaintiff was born on April 28, 1966, and was 39 years old at his administrative hearing. [Tr. 52]. The Plaintiff has a high school equivalent education and past relevant work as a state trooper. [Tr. 66, 71]. The Plaintiff suffered a work-related back injury in October of 2001. While trying to make an arrest, he was pushed into a refrigerator which resulted in a contusion of his lower back. [Tr. 100, 104]. The Plaintiff was seen in the Emergency Room on the date of his injury, October 11, 2001. The Plaintiff was treated for back pain and diagnosed with a left rib contusion. There was no fracture and the Plaintiff returned to work without restriction on October 13, 2001. [Tr. 280].

On June 10, 2002, the Plaintiff returned to the emergency room complaining of back pain with radiation into his right leg and knee. [Tr. 290]. The Plaintiff advised Dr. David Dinello that he had not sought any medical attention since he injured his back in October of 2001. The Plaintiff advised that he was alleviating his pain with Motrin and Vicodin. [Tr. 290]. Dr. Dinello determined that the Plaintiff's spine was "[p]ositive for diffuse paralumbar tenderness." He found that the Plaintiff's extremities were "[n]egative for straight leg raise. No edema or erythema. Full range of motion." The Plaintiff was diagnosed with "[a]cute and chronic lumbar strain, possible herniated nucleus pulposus." The Plaintiff was advised to use warm compresses (4x a day) and take Motrin 600 mg. (4x a day). The Plaintiff was prescribed Lortab as needed for severe pain, excused from work and advised to follow up with his doctor or an orthopedic surgeon in 7-10 days. [Tr. 291].

On June 17, 2002, the Plaintiff was seen by James M. Cullen, Ph.D., PT of Cortland Physical Therapy & Sports Rehabilitation of Cortland, New York. [Tr. 128]. The Plaintiff was seeing Dr. Cullen to rehabilitate his back to avoid having back surgery. Dr. Cullen's notes advised that the Plaintiff had been "seen over 6x in the past two weeks for treatments of moist heat and stretching." The Plaintiff also began swimming 3x a week at the YMCA for 45 min. to an hour.

The Plaintiff was seen by William A. Stewart, M.D. , Neurological Surgery, on August 6, 2002, for a consultation. Dr. Stewart found that the Plaintiff, "[h]as a left S1 radiculopathy secondary to the herniated disc. At this point, with the failure of conservative therapy, it is reasonable to say without surgery, what he has in the way of symptoms will not improve. With successful surgery, he should pretty much return to a normal status" For the

benefit of the workman's compensation board, Dr. Stewart found the Plaintiff to have "[a] temporary total disability for any type of work".  Dr. Stewart requested a consultation with Dr. Eng who would do the surgery. [Tr. 103].

On September 23, 2002, the Plaintiff met with Charles R. Reina, M.D., F.A.C.S., of Garger Associates.  Dr. Reina completed an evaluation based on a  review of the medical records, a medical examination and medical history and formulated with a reasonable degree of medical certainty, his conclusions.  He found the Plaintiff to have "[a] moderate to marked, temporary and partial disability with a guarded prognosis".  He also found the Plaintiff's prognosis was poor for returning to work based on "[t]he length of time since treatments were established and the time that he has been out of work to date". [Tr. 104 ]  Dr. Reina concluded  the Plaintiff "should  have some form of modified duty with restrictions for his overall psycho social rehabilitation while physically rehabilitating."   Dr. Reina stated under  Treatment Plan: "[M]r. Ortiz is not interested in operative intervention."  "[H]e is just on medications (Celebrex and Darvocet)  and there has been no discussion about returning to work." [Tr. 103-105].

On December 2, 2002, the Plaintiff was seen by Dr. Cullen and he reported a "pinching" feeling in his lower back.  The Plaintiff was advised  that  prolonged  sitting can cause numbness.  Dr. Cullen noted , " [t]he Plaintiff is continuing  to advance and is on a 100 lb. Resistence Cybex back extension machine." [Tr. 127].

On January 6, 2003, the  Plaintiff  was seen by Dr. Cullen and reported  that  pain was still his major concern.  However, the Plaintiff advised Dr. Cullen that his lumbar mobility and strength were good.  The Plaintiff was still using the Cybex back extension machine,

chest pressing 100 lbs. and using the Stair Master for ten (10)  minutes.   The Plaintiff's

insurance case manager asked  for the Plaintiff to be changed from a supervised program to

using the gym at the YMCA.  Dr. Cullen felt  that to be a reasonable request.  Dr. Cullen

advised the Plaintiff (who was amenable with exercising independently at the YMCA) that he

would be discharging him. [Tr. 126].

On  October 22, 2003,  the Plaintiff  had  an  MRI  examination  of  the  lumbar spine.

The results were compared with  the prior exam of July 18, 2002.  These results revealed a

herniation at L5-S1, with  disc spaces and posterior displacement of the left S1 nerve room at

the level of the herniation.  A diffuse bulge was seen at  T11-T12 disc space with moderate

central canal stenosis noted. [Tr. 112-113].

On  October 27,  2003,  the  Plaintiff  was  again  seen  by  Dr. Reina for follow-up.

Dr. Reina  reviewed all the records from Dr. Farber and he compared the 2002/2003  x-rays.

Dr. Reina remained  unchanged  in his opinion  that  a lumbar CT myelogram should  be

considered;  and possible exploration and discectomy; with consideration of an EMG for his

left leg symptomatology.  The Plaintiff's complaints of  pain remained  unchanged  but he

said that headaches were beginning to accompany his back pain. [Tr. 115].

On October 31, 2003, the Plaintiff was seen by Dr. David Yan Eng, M.D., for a

neurological consult.  In his letter to Dr. Farber; Dr. Eng advises that the Plaintiff's

complaints are consistent with a herniated disc, and  his  MRI  is  consistent  with a left L5-

S1 herniated disc.  Dr. Eng explained  to the Plaintiff his options would  include  surgery,

acupuncture or nerve blocks.  The Plaintiff reiterated that he did not want any surgical

intervention and was contemplating moving to a warmer climate. [Tr. 141-143]

On  December 11,  2003, Dr. Cullen issued a Physical Therapy Summary to the NYS Disability Determination Board advising that he was the physical therapist who was treating the Plaintiff for his back injury (on referral from the Plaintiff's initial physician, Dr. David Farber).  Dr. Cullen advised that the Plaintiff was limited in lumbar extension due to sudden pain,  presumably from L5-S1 disc pressing on S1 nerve root.  Additionally, that the Plaintiff had pain that would flare up with or without provocation.  Dr. Cullen wrote, "[I] have had no knowledge of any pre-existing  condition  or  other factor contributing to his disability other than the work related injury on 10/11/01".  [Tr. 125].

On December 16, 2003 the Plaintiff was referred by the Division of Disability Determination for an orthopedic examination.  He was examined  by  Kalyani Ganesh,  M.D. Dr. Ganesh's records  reveal  that the Plaintiff  stated  his  daily  activities included cooking 3 to 5 times a week, cleaning a couple of times a week, laundry 3 to 5  times a week, shopping once or twice a week.   The Plaintiff stated he was able to help with child care and he was responsible  for his personal hygiene.   Dr. Ganesh, M.D. diagnosed chronic lower back pain with a history of  a  herniated disk.  He projected his prognosis as stable and guarded.  He felt the Plaintiff had a moderate degree of limitation when sitting, standing, walking, climbing, lifting, carrying, pushing, pulling and  bending. [Tr. 130-132].

From February 2, 2004  to  May  6, 2004, the Plaintiff was seen by Dr. Ralph Ortiz, a pain management specialist.  The Plaintiff was treated with medication management, a home exercise plan and used a TENS unit. [Tr. 292-298].  On  March  4,  2004, a Worker's Compensation  Initial  Evaluation  Report was completed by Dr. Daniel Boje, a chiropractor. The  Plaintiff  was diagnosed with rupture or herniation of the lumbar disc and lumbar

8

radiculitis.  The plan of treatment was to include adjustive techniques, traction and other therapies. [Tr. 265-269].  The Plaintiff treated with Dr. Peter Clark from February 2, 2004 to approximately April 22, 2004 for such chronic problems: hypertension, reflux, hyper-cholesterolemia and chronic pain. [Tr. 176-181]. On September 30, 2004, the Plaintiff went to Dr. Keith Warde, a chiropractic physician. Dr. Warde's diagnosis was lumbar radiculitis, lumbar disc displacement without myelopathy, myositis and myalgia. [Tr. 136}. The Plaintiff received treatment at Lee Physicians Group for his low back pain, from July 21, 2004 to March 22, 2005 .On March 25, 2005, an MRI of the Plaintiff's spine revealed a left paracentral disc protrusion at L5-S1. [Tr. 144].

On March 16, 2005, the Plaintiff was involved in a motor vehicle accident and went to the emergency room at Lee Memorial Hospital. [Tr. 148-159].  The Plaintiff was prescribed Vicodin for the pain.  An MRI was taken which showed no evidence of spinal stenosis or cord compression.  Diagnosis: "Multiple contusions secondary to motor vehicle accident". [Tr. 155].  The Plaintiff was given a prescription of Vicodin for pain and advised to follow-up with his own physician. [Tr. 155].

On August 10, 2005, the Plaintiff was treated by Dr. Mark B. Gerber, a neurosurgeon because of neck pain, headaches and left shoulder pain.  It was noted the Plaintiff had a decreased range of motion in the neck. [Tr. 161].  An MRI of the left shoulder was ordered. The Plaintiff had a rotator cuff tear and on August 30, 2005, the plaintiff had left shoulder arthroscopic surgery with debridement and decompression.  This arthroscopic rotator cuff repair surgery was performed by Dr. John C. Kagan. [Tr. 252-259; 299-310].

The Plaintiff continued to have pain and stiffness in the neck and severe headaches. He consulted Dr. David Sudderth, a neurology specialist, who performed a left occipital block. Dr. Sudderth determined 'cervical radiculopathy, myofascial injury and occipital neuralgia'. He found the Plaintiff "[h]as a pre-existing lumbar radiculopathy secondary to a herniated disc". Dr. Sudderth recommended the Plaintiff continue with his chiropractic treatments and home stretching exercises. [Tr. 188].

The Plaintiff continued to see Dr. Warde from July 2004 through December 2005. On August 3, 2005, Dr. Warde completed a Physical Capacity Evaluation. Dr. Warde found the Plaintiff was limited to standing/walking - three (3) hours in an eight (8) hour day, sitting - two (2) hours in an eight (8) hour day, lifting up to ten (10) pounds occasionally and being unable to use his feet for repetitive movements. Dr. Warde noted the Plaintiff's multiple disc disorder would make him unstable and found his symptoms of numbness and shooting pain in the left leg in the moderate to severe range. Dr. Warde noted that these symptoms would be exacerbated by repetitive movements such as bending, lifting, standing or sitting. [Tr. 175].

The Plaintiff went to Dr. William Morrow, a psychotherapist beginning May 6, 2005. Dr. Morrow, in a letter to the Plaintiff's attorney, states, "[H]e sought treatment for himself for the sake of his marriage. He believes that his irritability results from his chronic physical pain and is endangering the security of his marriage relationship". Dr. Morrow did not find the Plaintiff to be addicted to his pain medications and found him to be "well-groomed, attentive, goal directed, organized, and logical with no abnormality pertaining thought content or perception". [Tr. 173, 271-273].

10

III.    **SPECIFIC ISSUES AND CONCLUSIONS OF LAW**

A.    **THE ALJ ERRED BY FAILING TO FOLLOW THE 11ᵀᴴ CIRCUIT PAIN STANDARD AND CREDIBILITY**

The Plaintiff contends the ALJ failed to apply the proper standard for the evaluation of pain and credibility and that the ALJ's RFC determination is contrary to the medical evidence of record.

1.    **PAIN STANDARD**

The Eleventh Circuit pain standard requires (1) evidence of an underlying medical condition and either (2) objective evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.  Once the standard is met, the ALJ must still evaluate the intensity and persistence of the symptoms based on all of the evidence of record.  20 C.F.R. 404.1529(c). The ALJ may discredit a claimant's subjective testimony regarding pain if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11ᵗʰ Cir. 2002).  Determining the credibility of a claimant is the duty of the Commissioner.  *Foote v. Chater*, 67 F.3d 1553, 1562 (11ᵗʰ Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Id*.

The ALJ  examined  the entire record in analyzing the claimant's pain, including his activities of daily living and side effects of medication.  The Plaintiff's activities of daily living included self-care activities, performing household chores slowly [vacuuming and

11

washing dishes] and driving short distances.  The Plaintiff also walks as far as he can [at least 1/4 mile occasionally] and swims when the water is warm. [Tr. 16]. The Plaintiff testified he is able to lift a laundry basket [about ten pounds] with clothes in it. [Tr. 16].  The Plaintiff testified to taking pain medication in  the  past  but because of the side effects of nausea and sleeplessness he no longer takes it. [Tr. 384]. The Plaintiff testified to being irritable and because of the  weakness in his left leg; having fallen ten (10) times in the past two years. [Tr. 16].

The ALJ found the Plaintiff's testimony not to be completely credible or consistent with the record.  The activities that the Plaintiff partakes in are inconsistent with his assertion that he is totally disabled.  The ALJ considered all of the Plaintiff's complaints and symptoms, including his allegations of pain in determining the appropriate RFC. [Tr. 15]. Thus, the first part of the pain standard was satisfied. The ALJ determined that both the evidence and the Plaintiff's testimony did not confirm that the Plaintiff's pain was of such a disabling severity as he alleged.  The ALJ concluded that the Plaintiff's testimony of his activities was inconsistent with his assertion that he was totally disabled. [Tr. 16].

## 2.    CREDIBILITY

The Plaintiff's back injury occurred on October 11, 2001.  He was treated for the back pain and  returned  to work  without  restriction on October 13, 2001. [Tr. 280].  The Plaintiff did  not  receive any  further treatment until June 10, of 2002.  The Plaintiff received conservative treatment with Dr. Farber and Dr. Eng. [Tr. 141-143].

The record clearly shows that the Plaintiff was fully evaluated by a neurosurgeon, a worker's compensation physician, a consultative examiner, a chiropractor and a pain management specialist as noted above.  The Plaintiff was advised that surgery was an option, although this was not supported by Dr. Eng.  Additionally, the Plaintiff expressed strong feelings that he did not want surgery under any circumstances. [Tr. 143].

The ALJ determined that the Plaintiff would not be able to return to his past relevant work because he was limited to light work.  Although the Plaintiff had a moderate degree of limitation in sitting, standing, walking, climbing, lifting, carrying,  pushing,  pulling  and bending, his examination showed no trigger point and no muscle atrophy. [Tr. 132].  It is documented  further  that the Plaintiff had no difficulties getting on or off an exam table or arising from a chair, although the Plaintiff did appear to shift frequently. [Tr. 131].

The Plaintiff received six months of physical therapy and regular chiropractic care. [Tr. 160-67, 176-82, 189-251, 312-12, 315-41].  At the hearing, the Plaintiff testified he was no longer receiving medical treatment, other than chiropractic adjustments. [Tr. 383-84].  The chiropractic limitations by Dr. Warde did limit the Plaintiff to standing and walking no more than 3  hours in an 8 hour work day, sitting 2 hours in an 8 hour work day, lifting up to 10 pounds occasion; no operating foot controls repetitively, occasionally bending, squatting and crawling and no climbing. [Tr. 174-75].

The Plaintiff argues that the ALJ did not adequately consider Dr. Warde's opinion but this  argument is without merit, because the ALJ properly noted that Dr. Warde's opinion was not entitled to any special consideration because he was a chiropractor.  29  C.F.R. §§

13

404.1513, 404.1527.[3]  Thus, the ALJ complied with the regulations by considering evidence from Dr. Warde, but retained the discretion to determine the appropriate weight to accord Dr. Warde's assessment and properly assigned it no weight.  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1160 (11th Cir. 2004) (chiropractic opinion cannot establish the existence of an impairment).

The ALJ considered all the evidence, along with the assessment from the Disability Determinations Office  which concluded the Plaintiff was able to perform light work. [Tr. 36-41].  The ALJ's finding is consistent with the Plaintiff's physicians' assessments and observations.

**B.      THE ALJ ERRED IN FINDING THE PLAINTIFF CAPABLE OF LIGHT WORK WITH RESTRICTIONS**

The medical evidence indicates that the Plaintiff has back problems, but does not have evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as described in the listings.  The ALJ determined that the Plaintiff's impairments did not preclude him from performing all work-related activities.  The ALJ found the Plaintiff able to perform work at the light exertional level with restrictions and not disabled under the framework of medical-vocational rule 202.21. [Tr. 19].

---

[3]      The regulation define medical opinions as statements from physicians and psychologists and other acceptable medical sources. 20 C.F.R. § 404.1527(a)(2).  A chiropractor is not an acceptable medical source but is considered an "other source" and while the Commissioner may consider evidence from other sources, such a source cannot offer a medical opinion.  20 C.F.R. §404.1513(d)(1).

The Plaintiff has not worked since June of 2002. An MRI scan revealed a herniated disc at the L5-S1 level after a work-related incident that occurred in October of 2001. In April of 2005, the Plaintiff was in a motor vehicle accident. [Tr. 100, 104]. The Plaintiff had successful surgery for this injury. [Tr. 148-159].

During the Plaintiff's hearing, he testified to chronic back pain from the work-related herniated disc. The ALJ noted that the Plaintiff receives worker's compensation benefits and private disability insurance. The Plaintiff sees a chiropractor for treatment on a regular basis. The ALJ did not find the Plaintiff's testimony entirely credible or consistent with the record as a whole. The Plaintiff performs self-care activities and household chores (slowly) and drives short distances. The Plaintiff testified to walking and swimming and maintaining the household. Further, the Plaintiff does not take prescription medications for pain relief.

The ALJ found the Plaintiff retained the residual functional capacity to be able to lift and carry 20 pounds occasionally and 10 pounds frequently; the Plaintiff is able to sit 20-30 minutes at a time before needing to change positions and is able to stand and walk (but needs to shift his weight when standing) and walk only short distances. The Plaintiff would not be able to work in places with dangerous machinery or unprotected heights, cannot climb ladders or scaffold. Thus, the ALJ found the Plaintiff has the residual functional capacity for work at the light exertional level with restrictions. 20 C.F.R. § 404.1567.

Since the Plaintiff's ability to perform all or substantially all of the requirements of light work is impeded by additional exertional and/or non-exertional limitations an impartial vocational expert may be used to help determine whether or not there are a significant

15

number of jobs in the national economy that the Plaintiff can perform given his residual functional capacity and other vocational factors.

The vocational expert testified at the hearing that based on the Plaintiff's specific work restrictions, the Plaintiff is capable of making a vocational adjustment to other work. The VE testified  that the Plaintiff could work as a toll collector, ticket seller  or cashier. [Tr. 399].  The information  provided by the VE is consistent with the *Dictionary of Occupation Titles*.  The ALJ considered the Plaintiff's age, educational background, work experience and residual functional capacity and found he is capable of adjustment to work that exists in significant numbers in the national economy.  Thus, a finding of not disabled is reached within the framework of Medical Vocational Rule 202.21.

## IV.    CONCLUSION

For the foregoing reasons, the ALJ's decision is consistent with the requirements of law and supported by substantial evidence.

**THEREFORE, IT IS RESPECTFULLY RECOMMENDED:**

That a judgment should be entered pursuant to sentence four of 42 U.S.C.  §405(g) **AFFIRMING** the decision of the Commissioner.

In Chambers, Fort Myers, Florida, this 19th  day of  July , 2007.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

16

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10)  days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal and a *de novo* determination by a district judge.  *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *see also* Fed.R.Civ.P. 6; M.D. Fla. R. 4.20.


Copies furnished to:

Honorable Marcia Morales Howard
United States District Judge

Jonas H. Kushner, Esquire
For Plaintiff

Susan R. Waldron, A.U.S.A.
Commissioner of Social Security